**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No.  10-32076

LUCIA K. SIMS

        Debtor

JOHN P. NEWTON, JR., TRUSTEE

        Plaintiff

       v.                                      Adv. Proc. No.  10-3100

LUCIA K. SIMS

        Defendant

**M E M O R A N D U M**

**APPEARANCES:**    LAW OFFICES OF MAYER & NEWTON
                              John P. Newton, Jr., Esq.
                              1111 Northshore Drive
                              Suite S-570
                              Knoxville, Tennessee  37919
                              Attorneys for Plaintiff

                            MENEFEE & BROWN, LLP
                              Mark E. Brown, Esq.
                              9724 Kingston Pike
                              Suite 206
                              Knoxville, Tennessee  37922
                              Attorneys for Defendant

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint Objecting to Discharge (Complaint) filed by the Plaintiff on September 28, 2010, objecting to the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2) and/or (4) (2006). The trial was held on May 23, 2011. The record before the court consists of two stipulated exhibits, eleven exhibits introduced into evidence, and the testimony of the Defendant.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(J) (2006).

# I

On August 21, 2009, the Defendant sold her residence in Green Brook, New Jersey, for a purchase price of $515,000.00, from which she received $162,959.38. TRIAL EX. 6. She then began searching for a condominium in Tennessee. When her attempts to purchase real property on her own proved unsuccessful due to her financial condition, the Defendant's son, John W. Sims, agreed to assist her, and the parties, as well as Mr. Sims' wife, Jennifer A. Sims, executed a letter drafted by the Defendant's former attorney, John Wood Goldsack, on August 27, 2009, memorializing an agreement "concerning the purchase of a condominium for [the Defendant's] use in Tennessee" (Purchase Agreement). TRIAL EX. 9. The Purchase Agreement, which was signed and accepted by the Defendant and Mr. and Mrs. Sims on August 31, 2009, states, in material part:

> It is your mother's understanding that she will contribute the sum of $150,000.00 toward the purchase and that you will take out a mortgage in the amount of $50,000.00 to cover the balance of the $188,400.00 purchase price and closing costs. Title will be vested in the name of John W. Sims and Jennifer A. Sims, husband and wife. Ideally, your mother should be vested with a "Life Estate", however, you would have to discuss this with your lender. Notwithstanding the manner which title is held, you agree that Lucia Sims shall be entitled to live in the subject premises for

>   as long as she desires and should she wish that the premises be sold you will agree to sell and reimburse her for the amount of her investment.
>
>   Lucia understands that upon her death the property will be yours to do as you choose and the value of her share shall be deemed John's inheritance.

TRIAL EX. 9.

In accordance with the Purchase Agreement, the Defendant, on September 1, 2009, transferred $145,000.00 to Mr. Sims by check #1334 drawn on her bank account at PNC Bank in New Jersey. TRIAL EX. 4. Thereafter, on September 18, 2009, John W. Sims and Jennifer A. Sims purchased a condominium located at 3709 Warmstone Way, Knoxville, Tennessee (Warmstone Way Property), using the Defendant's $145,000.00 together with additional funds borrowed by John W. Sims from Wells Fargo Bank, N.A. to finance the remainder of the purchase price. COLL. TRIAL EX. 7; TRIAL EX. 8. The loan from Wells Fargo Bank, N.A., approximating $50,000.00, is secured by a mortgage on the Warmstone Way Property. TRIAL EX. 7. Although Mr. and Mrs. Sims are the owners and responsible taxpayers, the Defendant is the sole occupant of the Warmstone Way Property. TRIAL EX. 8; TRIAL EX. 9; TRIAL EX. 15.

The Defendant filed the Voluntary Petition commencing her Chapter 7 bankruptcy case on April 23, 2010, along with the requisite statements and schedules; however, she did not list either the September 1, 2009 transfer of $145,000.00 to Mr. Sims or the August 27, 2009 Purchase Agreement in her Statement of Financial Affairs or elsewhere within her statements and schedules. COLL. TRIAL EX. 1. On September 10, 2010, the Plaintiff, as Chapter 7 Trustee, took a Rule 2004 examination of the Defendant in which he, among other things, questioned her about the transfer to Mr. Sims, and the Defendant testified that she had not amended any of her statements and schedules

filed in April 2010. TRIAL EX. 3. On September 28, 2010, the Plaintiff filed the Complaint initiating this adversary proceeding, averring that the Defendant transferred the $145,000.00 to Mr. Sims without consideration, with the intent to hinder, delay, or defraud her creditors, and that she knowingly and fraudulently failed to disclose the transfer in her statements and schedules, therefore making false statements to justify denial of her discharge.

On September 30, 2010, after the filing of this adversary proceeding, the Defendant filed an Amended Statement of Financial Affairs disclosing the transfer to Mr. Sims, followed on October 4, 2010, by a motion to dismiss her bankruptcy case. COLL. TRIAL EX. 1; TRIAL EX. 2. The motion to dismiss was denied by an Order entered on November 4, 2010, and on that same day, the Defendant filed her Answer to the Complaint. COLL. TRIAL EX. 1.

Pursuant to the Pretrial Order entered on December 28, 2010, the issues to be decided by the court are as follows: (a) whether the Defendant's transfer of $145,000.00 to her son within a year of her bankruptcy filing was made with the intent to defraud, hinder, or delay her creditors; (b) if so, whether the Defendant should be denied her discharge under § 727(a)(2)(A); (c) whether the Defendant's failure to list the transfer on her Statement of Financial Affairs constituted a false oath; and (d) if so, whether the Defendant should be denied her discharge under § 727(a)(4)(A).

## II

"Except as provided in section 523 . . ., a discharge under subsection (a) . . . discharges the debtor from all debts that arose before the date of the order for relief under this chapter[.]" 11 U.S.C. § 727(b) (2006). A Chapter 7 discharge relieves an "honest but unfortunate" debtor of his or her

4

debts, allowing a "fresh start" through the discharge, *Buckeye Retirement, LLC v. Heil (In re Heil)*, 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Company v. Hunt*, 54 S. Ct. 695, 699 (1934)), and debtors receive a general discharge of all pre-petition debts under § 727, unless one of ten express limitations exists, including, as are relevant to this adversary proceeding, the following:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> . . . .
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
>> (A) made a false oath or account[.]

11 U.S.C. § 727(a). These limitations furnish creditors with "a vehicle under which *abusive* debtor conduct can be dealt with by denial of discharge[,]" *Blockman v. Becker (In re Becker)*, 74 B.R. 233, 236 (Bankr. E.D. Tenn. 1987) (quoting *Harman v. Brown (In re Brown)*, 56 B.R. 63, 66 (Bankr. D.N.H. 1985)); however, § 727(a) is liberally construed in favor of debtors, and the party objecting to discharge bears the burden of proof by a preponderance of the evidence. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); FED. R. BANKR. P. 4005.

### A

The Plaintiff first objects to the Defendant's discharge under § 727(a)(2)(A), which requires proof that the Defendant disposed of, transferred, or concealed property within one year of filing her

5

bankruptcy petition and that she possessed the intent to either hinder or delay or defraud her creditors by disposing of her property. *Roberts v. Oliver (In re Oliver)*, 414 B.R. 361, 381 (Bankr. E.D. Tenn. 2009) (citing *Keeney*, 227 F.3d at 683-84; *Cuervo v. Snell (In re Snell)*, 240 B.R. 728, 730 (Bankr. S.D. Ohio 1999)). To satisfy § 727(a)(2)(A), the Plaintiff must prove that the Defendant engaged in actual fraud because constructive fraud does not suffice, *Oliver*, 414 B.R. at 381, and may, because of the inherent difficulty in proving intent, use circumstantial evidence, including evidence of the Defendant's conduct, to establish her intent through "badges of fraud," including but not limited to the following:

> (1) the lack of adequate consideration for the transfer; (2) the family, friendship, or close relationship between the parties; (3) the retention of possession, benefit, or use of the property in question by the debtor; (4) the financial condition of the party sought to be charged prior to and after the transaction in question; (5) the conveyance of all of the debtor's property; (6) the secrecy of the conveyance; (7) the existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors; (8) the general chronology of events and transactions under inquiry; (9) whether the transfer was conducted at arm's length; (10) whether the debtor was aware of the existence of a significant judgment or over-due debt; (11) whether a creditor was in hot pursuit of its judgment or claim and whether the debtor knows this; and (12) the timing of the transfer relative to the filing of the petition.

*See Ayers v. Babb (In re Babb)*, 358 B.R. 343, 350-51 (Bankr. E.D. Tenn. 2006) (citing *E. Diversified Distrib., Inc. v. Matus (In re Matus)*, 303 B.R. 660, 672-73 (Bankr. N.D. Ga. 2004); *Adamson v. Bernier (In re Bernier)*, 282 B.R. 773, 781 (Bankr. D. Del. 2002)). If the Plaintiff establishes the existence of badges of fraud, the burden will shift to the Defendant to rebut the presumption, and "[j]ust one wrongful act may be sufficient to show actual intent . . . [although] a continuing pattern of wrongful behavior is a stronger indication [thereof]." *Babb*, 358 B.R. at 351 (quoting *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 157 (Bankr. N.D. Ohio 1998)).

Of the foregoing "badges of fraud," the Plaintiff has focused on those concerning the relationship between the Defendant and Mr. Sims and the Defendant's financial condition at the time of the transfer. The Plaintiff argues that § 727(a)(2)(A) is satisfied because the Defendant made the transfer of $145,000.00 to Mr. Sims, her son, at a time when she owed more than $100,000.00 in credit card debt, and because, under the Purchase Agreement, she could require the sale of the Warmstone Way Property and be reimbursed the amount of the transfer at any point in the future. In opposition, the Defendant argued that only because she was unable to purchase a home without assistance did she transfer the $145,000.00 to her son, after which, he obtained a $50,000.00 mortgage to pay the balance of the $188,400.00 purchase price for the Warmstone Way Property in which she now lives. As additional evidence of her lack of fraudulent intent, the Defendant testified that she was, at that time and all times preceding her bankruptcy filing, making payments on her unsecured debts.

The Plaintiff has argued that the Defendant was indebted on a number of credit cards at the time of the transfer and rather than using the funds to pay off her creditors, the Defendant transferred it to her son to purchase the Warmstone Way Property, thus rendering her insolvent. Under Tennessee law, the statutory definition for insolvency is "[a] person is insolvent when the present fair salable value of the person's assets is less than the amount that will be required to pay the probable liability on such person's existing debts as they become absolute and matured." TENN. CODE ANN. § 66-3-302 (2004). "The debts that enter into the test for insolvency are the ones in existence when the conveyance is made. They may become due and payable at a future date, but

they must be in existence at the time." *Crocker v. Ryan*, 914 S.W.2d 551, 553 (Tenn. Ct. App. 1995).

Here, it is undisputed that the entire $145,000.00 transferred to Mr. Sims by the Defendant was paid for the purchase by Mr. and Mrs. Sims of the Warmstone Way Property. Likewise, the Defendant was unquestionably in debt when she made the transfer to Mr. Sims and, once she made the transfer, the value of her assets was substantially less than the amount of her liabilities. Nevertheless, the Defendant did not file her bankruptcy case until April 23, 2010, approximately seven months after the transfer. At trial, the Defendant testified that she continued to make payments on her credit card debt for the months between the purchase of the Warmstone Way Property and her bankruptcy filing, a fact reflected in and substantiated by her statements and schedules, but that after many of her minimum payments were raised, she subsequently ran out of money and was unable to find a job to supplement her social security and pension income so that she could continue paying her debts. The Defendant's use of her largest asset – the proceeds from the sale of her home in New Jersey – toward the purchase of another home, even though she did not actually own the new residence, was reasonable and the fact that it rendered her insolvent does not, without more, rise to the level of fraud required for a denial of discharge.

Finally, the Plaintiff argues that the Purchase Agreement between the Defendant and Mr. Sims reserving a right for the Defendant to be reimbursed the $145,000.00 in the event she wanted the Warmstone Way Property sold provides evidence of her intent to hinder, delay, or defraud her creditors, in part due to its very terms and in part because it was not disclosed, thus depriving the Plaintiff of the opportunity to exercise the right of sale for the benefit of creditors. In

support of his argument, the Plaintiff has focused upon the statement that "[n]otwithstanding the manner which title is held, you agree that Lucia Sims shall be entitled to live in the subject premises for as long as she desires and should she wish that the premises be sold you will agree to sell and reimburse her for the amount of her investment." TRIAL EX. 9.

The Plaintiff is correct in his assertion that the language of the Purchase Agreement does allow for the Defendant to request a sale of the Warmstone Way Property and that upon a sale, she would receive the $145,000.00 she contributed. However, there is nothing in the record to indicate that the Purchase Agreement was created for any nefarious purpose. The document was drafted on August 27, 2009, at the Defendant's request, and executed by the parties on August 31, 2009. The following day, the Defendant transferred the $145,000.00 to Mr. Sims, and eighteen days later, he purchased the Warmstone Way Property, where the Defendant was already residing and paying rent. As stated in correspondence from Mr. Sims to the Defendant's attorney dated March 22, 2010, the transfer "was not a gift to move money out of her estate but rather a necessary way for her to be able to purchase the condo with [his] assistance." TRIAL EX. 16. Following the transaction, the Defendant continued to make payments to her creditors until almost eight months later, when she filed her bankruptcy petition because, as she testified, she could no longer afford the raised payments and had been unable to find employment. The court is convinced that the sole purpose for the Purchase Agreement was the Defendant's comfort, so that she would have something in writing in the event something tragic happened to her or to Mr. Sims.

Likewise, the court finds that there is nothing in the record to indicate that the Defendant had any intention of doing anything with the Warmstone Way Property other than live in it. There is no

9

dispute that $145,000.00 contributed towards the purchase price of the Warmstone Way Property was derived from the sale of the Defendant's home in New Jersey and that the Defendant's desire to sell her house in New Jersey was so that she could move to and buy a house in Tennessee. The Defendant testified convincingly that had she been able to purchase a home on her own, without the assistance of her son, she would have done so, and there would have been no Purchase Agreement or transfer with Mr. Sims. The fact that the Defendant retained the ability to recoup her $145,000.00 in the event the Warmstone Way Property was sold does not, in any way, evidence an intent on her part to do so once out of bankruptcy. Accordingly, the court finds that the elements of § 727(a)(2)(A) have not been satisfied.

**B**

The Plaintiff also argues that the Defendant's discharge should be denied pursuant to § 727(a)(4)(A) based upon her failure to disclose either the Purchase Agreement or the $145,000.00 transfer in her statements and schedules. A denial of discharge under § 727(a)(4)(A) requires proof that a debtor (1) made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false when making it; (4) the debtor fraudulently intended to make the statement; and (5) the statement materially related to the bankruptcy case. *Babb*, 358 B.R. at 355 (citing 11 U.S.C. § 727(a)(4)(A)). Both affirmative false statements and omissions fall within the scope of § 727(a)(4)(A), *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), and statements are material if related to a debtor's bankruptcy estate, the discovery of assets, the existence and disposition of property, business enterprises or transactions, and/or matters pertinent to the discovery of assets. *Keeney*, 227 F.3d at 686; *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459, 461

(Bankr. S.D.N.Y. 1992). "Statements under oath" falling within the scope of § 727(a)(4)(A) include bankruptcy statements and schedules, which are executed under penalty of perjury, and testimony given by a debtor at the meeting of creditors, in a deposition, or in a 2004 examination. *Babb*, 358 B.R. at 355.

Fraudulent intent is often discerned from a debtor's conduct, demonstrated by material representations or omissions that the debtor knows are false but are likely to create an erroneous impression, as well as a debtor's reckless disregard or indifference for the truth as exhibited by continuing patterns of omissions and/or false statements in his or her bankruptcy schedules. *Keeney*, 227 F.3d at 685; *Babb*, 358 B.R. at 355. "[I]ntent may [also] be inferred from circumstantial evidence," *Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 743 (Bankr. S.D. Ohio 2008), and intent will often "turn on the credibility and demeanor of the debtor[.]" *LaRocco v. Smithers (In re Smithers)*, 2006 Bankr. LEXIS 265, at *9 (B.A.P. 6th Cir. March 2, 2006) (quoting *Groman v. Watman (In re Watman)*, 301 F.3d 3, 8 (1st Cir. 2002)). Additionally, "[t]he elements of 'knowingly' and 'fraudulently' may not be conflated. They each must be proven." *Abbey v. Retz (In re Retz)*, 364 B.R. 742, 754 (Bankr. D. Mont. 2007). "Knowledge that a statement is false can be evidenced by a demonstration that the debtor 'knew the truth, but nonetheless failed to give the information or gave contradictory information.'" *Babb*, 358 B.R. at 355 (quoting *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999)). "[W]hile mistakes do not warrant a denial of discharge, reckless indifference or disregard can provide the foundation for a finding of fraudulent intent." *Noland*, 387 B.R. at 743; *Hamo*, 233 B.R. at 724-25.

On the other hand, "[a] false statement resulting from ignorance or carelessness does not rise to the level of 'knowing and fraudulent.'" *Retz*, 364 B.R. at 754 (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 884 (B.A.P. 9th Cir. 2005)). It is, likewise, "well established that a court may consider the debtor's subsequent voluntary disclosure as evidence of innocent intent[,]" *Kelly*, 135 B.R. at 461, and a debtor who mistakenly or inadvertently provides false information or fails to disclose relevant information but takes steps to amend his schedules to correct them prior to or during a meeting of creditors is not generally thought to possess the requisite fraudulent intent to deny discharge under § 727(a)(4)(A). *Keeney*, 227 F.3d at 686; *Babb*, 358 B.R. at 355-56.

> [S]ince interested parties should not be required to drag the truth from the debtor, a showing of good faith in a § 727(a)(4)(A) matter will often come down to whether a debtor has abided by this cardinal rule: when in doubt, disclose. For example, a debtor is likely to be forgiven for simply mislabeling an asset, where its existence is still initially disclosed. However, where a debtor only voluntarily discloses information after its existence is uncovered by a third-party (e.g., a trustee or creditor), good faith is unlikely to be found.

*United States Tr. v. Halishak (In re Halishak)*, 337 B.R. 620, 630 (Bankr. N.D. Ohio 2005) (internal citations omitted).

Based upon the record, the court finds that the Defendant knowingly made false statements in her statements and schedules by failing to disclose the Purchase Agreement and the $145,000.00 transfer to Mr. Sims and that she did so with the requisite intent to justify a denial of her discharge. Irrespective of the reason, the transfer of $145,000.00 eight months prior to filing for bankruptcy was a material transaction involving the Defendant's assets. There is no question that the Defendant did not list either the Purchase Agreement or the subsequent $145,000.00 transfer to her son in her statements and schedules. The record is equally clear that the Defendant's attorney had been

12

informed about the details of the condominium purchase by the Defendant as well as by Mr. Sims, as evidenced by the March 22, 2010 correspondence from Mr. Sims to Mr. Brown, the Defendant's bankruptcy attorney, wherein Mr. Sims gave details concerning the transfer and expressed his concern that the Defendant could "potentially [be] required to sell the condo (likely at a loss) to pay off creditors[,]" and wanting assurance that "[i]f a Judge were to demand this action . . . [the Defendant] will be able to rescind her claim without being required to take such desperate action that will burden her further." TRIAL EX. 16.  Nevertheless, although she and her attorney both knew about the Purchase Agreement and transfer, when questioned at trial as to why she did not disclose these transactions, the Defendant testified that she "never thought of it."  However, the Defendant is not an unsophisticated debtor.  From 2002 to 2007, she was a sales associate with a large, private real estate company in New Jersey.  In fact, she sold her house in New Jersey herself.  For sixteen years prior to her work in real estate, the Defendant was the administrator for a church in the New Jersey town where she resided.

Furthermore, the Defendant was aware that the Plaintiff was concerned by and questioning these omissions as early as July 21, 2010, when he filed a motion to extend the time to file an objection to her discharge, and July 22, 2010, when a Notice of Assets & Request for Notice to Creditors was prepared and sent at the Plaintiff's request by the clerk's office. *See* COLL. TRIAL EX. 1.  And yet, although the Defendant filed an Amended Statement of Financial Affairs, she did not do so until September 30, 2010, more than four months after her May 24, 2010 meeting of creditors, twenty days after her 2004 examination and two days after the Plaintiff filed the Complaint

13

initiating this adversary proceeding.[1]  *See* COLL. TRIAL EX. 1.  The failure of the Defendant to amend in light of the Plaintiff's pursuit of information and subsequent filing of this adversary proceeding evidences bad faith or, at a minimum, a reckless indifference for the truth, which provides the foundation and justification for a denial of her discharge.  Accordingly, the Plaintiff has met his burden of proof, and the Defendant's discharge will be denied under 11 U.S.C. § 727(a)(4)(A).

A Judgment consistent with this Memorandum will be entered.

FILED:  July 1, 2011

                                            BY THE COURT

                                            */s/ RICHARD STAIR, JR.*

                                            RICHARD STAIR, JR.
                                            UNITED STATES BANKRUPTCY JUDGE

---

[1] The court also notes that the Defendant sought to dismiss her case, filing the motion on October 4, 2010, six days after this adversary proceeding was filed.  *See* COLL. TRIAL EX. 1.